CLARA V. LE GENDRE, HENRIETTA LU GAR and WILLIAM
C. LE GENDRE

v.

FANNY J. BYRNES et al.

1. An agent is bound to serve his principal to the best of his skill, knowl-
edge, ability and judgment, and the law, to prevent him from being tempted
to betray his principal, will not allow him to place his interests in conflict with
those of his principal.

2. An agent who takes title from his principal to property of which he has
charge for his principal, is bound to show affirmatively, in order to maintain
his title, if it is assailed, that the transaction out of which his title arose, was
fair, open, voluntary and well understood.

3. In such cases fraud will be presumed, and the agent, in order to keep
what he has got, must show affirmatively that he has not abused the confidence
which his principal reposed in him.

4. This rule applies to the case where a child acts as the agent of his parent,
as well as to the case where the agent is a stranger in blood to his principal.

5. A bill will not be dismissed, on demurrer, on the ground of laches, in a
case where there is no analogous statutable bar, unless it appears, on the face
of the bill, that the complainant has delayed suing for so long a time, after his
cause of action arose, as to deprive the court of the power of ascertaining,
with reasonable certainty, what the truth is respecting the matter on which he
rests his right to a decree, or that he has, by his delay, placed himself in a
position where he has gained an unfair advantage over his adversary.

On motion to dismiss bill, on notice under ¶ 224 of the
Rules.

*Mr. Anthony Q. Keasbey,* for the motion.

*Mr. Oscar Keen, contra.*

VAN FLEET, V. C.

The main object of this suit is to procure a decree invalidat-
ing a deed made by Maria Mulock, now deceased, in June, 1880,
to her daughter, Fanny J. Byrnes. Mrs. Byrnes asks for a dis-

missal of the complainants' bill, on the ground that, even if the facts stated in it are taken to be true, no case is made which entitles the complainants to the decree they ask. Both the complainants and the defendant are beneficiaries under the will of Mrs. Mulock. The defendant and two of the complainants were her daughters, and the other complainant was her grandson. If the decree which the complainants ask should be made, the title to the lands in question will not vest in the complainants, but in trustees appointed by the will of Mrs. Mulock, to be held by them, however, for the benefit of the complainants and Mrs. Byrnes. The complainants allege, that, prior to the institution of their suit, they applied to the trustees to bring a suit for the same purpose for which they now sue, but that the trustees refused to do so. The complainants then brought this suit, not only against Mrs. Byrnes, but also against the trustees. It is not disputed that the complainants have a right to maintain this action, under the circumstances stated, provided it shall be determined that the facts, which constitute the gravamen of their action, are sufficient to support the decree they ask.

The case made by the bill against the validity of the deed under which the defendant holds the lands in question, may be stated as follows: Mrs. Mulock died on the 12th of May, 1882, at the age of eighty-six; she left a will, by which she directed that almost the whole of her estate should be divided into three shares; she gave one share to the defendant absolutely, and the use of the other two-thirds, in equal shares, to the complainants, Mrs. Le Gendre and Mrs. Lu Gar, during life, with remainder to their respective issue. Mrs. Mulock was a lady of large means; she owned real estate in the city of New York, and also in Richmond county, New York, and in the cities of Chicago, Illinois, and Newark, New Jersey; for five years prior to her death she had been in feeble health, and her mind, for all that time, in consequence of her sickness and old age, was so far impaired as to render her incapable of managing her property and her business. The defendant lived with her mother, and for five years prior to her mother's death, was her mother's agent and confidential adviser, and had the care and management of all her

mother's property. While standing in this relation to her
mother, and on the 11th of June, 1880, she induced her mother
to convey to her, without consideration of any kind, improved
property, situate in the city of Newark, worth at least $40,000,
of which she was then collecting the rents for her mother, and
withheld the deed from record until after her mother's death.
The bill, in addition to the facts above set forth, charges the
defendant with having induced her mother to make the deed in
question by fraud and the exercise of undue influence, but does
not state the particular acts or facts on which this charge is
founded. And this omission is made the main ground of the
defendant's motion. If this charge constituted the only founda-
tion of the complainants' right to relief, the bill would be sub-
ject to objection, on the ground that it lacked that degree of full-
ness and particularity in statement which the rules of pleading
require. The case will, however, be considered as though the
bill contained no such charge in express terms.

For present purposes, the defendant must be understood as
assenting to the truth of each fact above asserted. The question
then is, Do the facts thus admitted so far impugn the integrity
of the defendant's deed as to make it the duty of the court to set
the deed aside? The answer which must, according to a highly
salutary principle of law, be given to this question, I think, is
entirely plain. The bill describes, the relation existing between
the mother and the daughter, at the time the deed was made, as
that of principal and agent, but the facts therein stated would rather
seem to indicate that it more closely resembled that of guardian
and ward. The mother was in feeble health and weak in mind;
she had reached the last stage of her life on earth; her natural
strength was so far abated and impaired as that a little labor,
either physical or mental, had become a great toil to her. She
had reached the point in human existence where nothing is so-
desirable as rest, freedom from care, and peace. To an old lady,.
in this condition, a surrender of the management of her property
and the conduct of her business into other hands, so that she may
be free from its care and worry, is almost indispensable to her
comfortable existence, and the person to whom she commits her

Le Gendre *v.* Byrnes.

interests, whether a child or stranger, very soon, as a general rule, acquires over her not only a very powerful influence, but, in most cases, an absolute ascendency. Her manager, generally, very soon becomes the guardian of both her property and her person. The bill puts the defendant very much in this position towards her mother. For over three years prior to the making of the deed, the bill says, the mother's state was one of complete dependency, and the daughter was in a position where she could exercise almost supreme control. It also says, that, while the parties occupied these positions towards each other, the daughter got from her mother a deed for property, worth at least $40,000, for which she gave her mother nothing.

. Whether we say the defendant, at the time she obtained title, was simply the agent of her mother, or stood in a relation to her mother where she was subject to higher duties and greater responsibilities than those of an agent, is, in my judgment, of no importance whatever. As agent simply she was bound, in all her dealings with her mother, to practice towards her mother the .utmost good faith. The law on this subject is settled beyond all question, and rests on the highest considerations of justice and safety. An agent is bound to serve his principal to the best of his skill, knowledge, ability and judgment. The law, to prevent him from being tempted to betray his principal, will not allow him to place his interests in conflict with those of his principal, and if, in any case, this rule be violated, the agent, in order to keep what he has obtained, must show that, in the particular transaction, he served his principal, against himself, with the same fidelity that he would have been required to use against a third person. Lord Eldon called it a great rule, which requires, that he who bargains in a matter where he may obtain an advantage for himself, with a person placing confidence in him, shall show, as a condition of keeping what he has obtained, that he made a reasonable use of the confidence reposed in him. *Gibson* v. *Jeyes, 6 Ves. 266, 278.* If an agent obtains from his principal the title to lands of which he has charge for his principal, and the validity of his title is subsequently assailed, he must, even in a case where he has given a consideration, in order to maintain his

title, show affirmatively that there was no undue influence exercised, no advantage taken, and no imposition practiced.   In the language of Mr. Justice Van Syckel, speaking for the court of errors and appeals, in *Condit* v. *Blackwell, 7 C. E. Gr. 481, 486:* "The transaction must be characterized by the utmost good faith.   There must be no misrepresentation, and an entire absence of concealment or suppression of any fact within the knowledge of the agent which might influence the principal; and the burden of establishing the perfect fairness of the contract is upon the agent."   The same principle, in a somewhat more comprehensive form, was declared by Judge Hand, in pronouncing the judgment of the court of appeals of New York, in *Cowee* v. *Cornell, 75 N. Y. 91, 99.*   He said: "It may be stated as universally true, that fraud vitiates all contracts, but, as a general thing, it is not to be presumed, but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they did not deal on terms of equality, but that either on the one side from superior knowledge derived from a fiduciary relation, or from overmastering influence, or, on the other, from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party, to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood."   The question in cases where a conveyance is made, without consideration, to a person standing in a fiduciary relation to the grantor, is not, as was said by Lord Eldon, in *Huguenin* v. *Baseley, 14 Ves. 273,* whether the grantor knew what he was doing when he made the deed, and intended to make it, but how the intention, under which he acted, was produced; whether all that care and providence was placed round him, as against those who advised him, which from their situation and relation with respect to him, they were bound to exert on his behalf.

Now, I think, the facts stated in the bill demonstrate, beyond

dispute, that the parties to the transaction under review did not deal on terms of equality. On the one side there were weakness, dependence and trust, and on the other there was a person in a position of influence, where she could practice fraud with ease and with little danger of detection. Besides, the transaction on its face renders it highly probable that all was not fair, open, voluntary and well understood. The gift was a very large one, amounting in value to at least $40,000. The fact that the evidence of it was concealed until after the death of the donor, or rather withheld from the public records, where a prudent grantee, under ordinary circumstances, would have placed it very soon after getting it, if not a strong badge of fraud, is a circumstance which, I think, the complainants have a right to have explained in a judicial proceeding.

The fact that the person standing in the relation of agent to the grantor in this case was a child, and not a stranger, neither changes the rule of law to be applied, nor mitigates its rigor. The law forbidding persons occupying positions of trust or confidence from using their positions to gain advantage for themselves, by betraying those who trust them, must be applied by the courts to every case where the evils exist which the rule was intended to prevent or correct, regardless of the relationship which may happen to exist between the betrayer and the betrayed. The first and most important question to be asked, in cases of this kind, after a relation of trust or confidence has been shown to exist, is, Is a betrayal shown? If it is, the duty of the court is plain. The law must be enforced.

The defendant also asks a dismissal of the complainants' bill on the ground of laches. The defendant says the complainants have lost their right of suit by delay. Their bill was filed December 23d, 1887. Mrs. Mulock died on the 12th of May, 1882, but her will, according to a statement contained in the bill, was not admitted to probate until the 28th of February, 1884. The defendant did not record her deed until the 3d of June, 1882. When the complainants first obtained actual knowledge of the existence of her deed does not appear. Their suit was brought, however, within less than six years after the defendant's

deed was recorded, and within less than four years after Mrs. Mulock's will was admitted to probate. If the defendant's deed is invalid, the legal title to the lands in question, vested, on Mrs. Mulock's death, in the trustees appointed by her will. They were the persons, who, in the first instance, had the exclusive right to sue, and the complainants were without right, in that regard, until the trustees declined to exercise their right. Great delay is a good bar to a suit in equity, and courts of equity, from the earliest times, have, on principles of their own, and in cases where there was no analogous statutable bar, refused relief to stale demands; but they never adopt this course, at the threshold of a suit, in a case where there is no analogous statutable bar, unless it is clear, on the face of the bill, that the complainant has delayed suing for so long a time, after his cause of action arose, as to deprive the court of the power of ascertaining, with reasonable certainty, what the truth is respecting the matter on which he rests his right to a decree, or that he has by his delay placed himself in a position where he has gained an unfair advantage over his adversary. Nothing of that kind appears in this case. No reason exists, so far as I can discover, why the complainants should not be heard. The case which they make by their bill, is certainly one which, in its inherent justice, entitles them to what they ask, unless it is shown that the defendant obtained her deed by fair means, and without abuse of the confidence which the grantor reposed in her.

The defendant's motion must be denied, with costs.