[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 444 
These five cases have been consolidated and submitted under stipulations of facts for determination by the court without a jury.
Each plaintiff sues as a beneficiary named in an insurance certificate issued to an employee of defendant, The Babcock 
Wilcox Company, under a group insurance policy issued to that company by defendant, The Travelers Insurance Company.
Each of the employees was inducted into military service during the recent war while employed by The Babcock Wilcox Company and each was killed in action in the year 1944.
Each plaintiff seeks a judgment either against The Travelers or against Babcock Wilcox for the amounts payable under the insurance certificate issued to the deceased employee. The defense of both defendants is that each certificate was effectively canceled prior to the death of the employee.
The group policy was issued in 1936 and by its terms all premiums were payable and were in fact paid by the employer. At or before delivery thereunder of certificates to the respective employees each received a pamphlet captioned "Free *Page 445 
Group Life Insurance Plan for Employees" which stated the terms and conditions under which the certificate was held, and each certificate also stated that it was issued in accordance with the plan and under all of its terms and conditions. Two pertinent articles of the plan read as follows:
 "IX. TERMINATION OF INSURANCE.
"The insurance of any employee insured under the Group Life Insurance Policy issued under this Plan will terminate upon the termination of his employment, except that in cases where employment was terminated by reason of an approved leave of absence granted to the employee or because of reduction of force — as shown by the records of the Company — such insurance will continue as long as such employee continues on the insurance roll — as shown by the records of the Company — but not for more than three months after such termination of employment."
 "IX. CONTINUANCE OF PLAN.
"This Plan is entirely voluntary on the part of the Company. The Company reserves the right to change, modify or discontinue this Plan and any insurance in effect thereunder on any quarter date."
Before or at the time of the entry into military service of each of the deceased employees, each received from his employer the following notice:
 "Government Life Insurance and Company Group Life Insurance
"The Company recommends that you take advantage of the Government insurance under the National Service Life Insurance Act of 1940 which provides five year term life insurance in amounts from $1000 to $10,000 at low premium rates and with conversion privileges for persons entering the Military Service.
"The Company will reimburse you for the cost of such Government insurance up to the extent shown following:
"For an amount of insurance equal to the combined group insurance under both the Free Contributory plans held at the time of your leaving our employ —
"With regular increases in the amount of group insurance under the Free Group plan as though you were still in the employ of the company.
"At the premium rate paid by you to the Government for such amount of insurance. Such payments will be made periodically upon your advising us as to the amount of Government insurance carried, the effective date of such insurance and its cost. A statement should be obtained by you from the officer in charge of the Government Insurance giving such information and forwarded to the company. *Page 446 
If you desire to have any particular reimbursement paid to anyone other than yourself you should give us the name and address of the party to whom the check should be made payable.
"For a period of not more than 30 months subsequent to December 31, 1941 or the date upon which you left the employ of the Company to enter military service, whichever is later.
"The Company will continue your Group Life Insurance Coverage under the Free Group Life Insurance and Contributory Plans for a period of four months from December 31, 1941, or four months from the date you left the company's employ to enter military service, whichever date is the later, without cost to you and increase in the amount of insurance will be given under the Free plan as though you were continuing in the company's service. If, however, you obtain Government Insurance prior to the expiration of this period, the Group Life Insurance will be discontinued as of the date the Government insurance becomes effective and the Company will commence as of that date to reimburse you for the cost of the Government insurance to the extent explained in the preceding paragraph."
The employer also gave a general notice to the insurance company of its intent to cancel the insurance of employees in or entering the armed forces as of dates 120 days "after they terminate their employment to enter such service" unlesss an employee obtained government insurance prior to such date in which event the notice stated the employer's intent "to cancel his (the employee's) group insurance as of the date the government insurance becomes effective." The insurance company was notified in the case of each of the certificates in suit to cancel the same on a date four months subsequent to the entry into the armed forces of the employee holding the certificate and the insurance coverage under each was accordingly discontinued and the certificate canceled by the insurance company as of a date prior to the date when the employee was killed, and without notice by the insurance company to the employee of the act of cancellation.
No premiums on the certificates were paid after their respective termination dates nor did any of the employees avail themselves of the conversion privileges allowed by the plan.
All of the employees were members of a union and covered by labor agreements which contained special provisions dealing with the rights of employees inducted into the armed services. These will be discussed below. *Page 447 
The controlling issue as to the liability of the insurance company is whether the certificates were in force when the employees were killed. It is conceded that the required steps under the insurance contract for cancellation of the certificate had been taken before the employees' deaths, but plaintiffs refer to the provision of the certificates that "the insurance of any employee covered hereunder shall terminate when his employment with the employer shall terminate," and argue that by force of section 8 of the Selective Training and Service Act (50 U.S.C.A.Appendix, § 308) neither the employer nor the insurance company could consider the employees to have the status of terminated employees upon entry into military service. But section 308 does not purport to restrict in any way the severance by induction into the armed forces of the employer-employee relation and its incidents. Its purpose and effect was to protect "re-employment" rights of inducted employees upon return from service provided the prescribed requisites are satisfied by a veteran applying to his former employer for reinstatement. Indeed, by its terms even re-employment can be refused if "the employer's circumstances have so changed as to make it impossible or unreasonable" to re-employ the veteran. And the provision that the veteran "shall be entitled to participate in insurance or other benefits" is expressly made applicable only to a veteran "who is restored to a position in accordance with the provisions" of the act. This statute was enacted to protect "re-employment" rights within prescribed limits to those whoreturned from military service. Any incidents of the former employment relation which survived induction of an employee who did not return after military service resulted not from this statute but from contractual arrangements. And of course the statute's benefits in nowise extended to the dependents of him who made the supreme sacrifice. Other and different enactments apply in such case. See "Payments and Benefits upon Death inService," American Law of Veterans (1946), pages 479 et seq.
Plaintiffs also argue that the cancellations were in any event ineffective for want of notice by the insurance company *Page 448 
to the employees of the acts of cancellation. This argument can be sound only if the contract conditions as to the procedure for cancellation include a requirement for such notice since, as a matter of contract, cancellation is effected when the prescribed antecedent conditions for that purpose are satisfied. But under this contract neither the policy nor the certificate provides that the employees were entitled to notice either from the employer or the insurance company. Both the certificate and the pamphlet outlining the plan, as well as the notice given by the employer to the employees on induction, apprised them that their termination of employment by induction into military service ended the insurance coverage and, more, the notice on induction specifically apprised each of the termination date of the coverage. This, if anything, was notice that the employer was under no duty to give.
The suit against the employer, The Babcock Wilcox Company, is based on an additional ground. It charges breach of labor agreement provisions which it is contended treated employees in military service as on leave of absence or furlough and thus that the employees could not be treated by their employer as terminated employees for the purposes of group insurance. It is not necessary to consider whether the union agreements treated employees in military service as if on leave of absence or furlough because the agreement in effect when the employees were inducted and at the times the certificates were canceled contained the following provision as to group insurance among provisions under a heading "Benefits during Special Leave":
"(B) Group Life Insurance: Group Life Insurance coverage under the Free Group Life Insurance and Contribution Plans shall be continued during special leave for Military Service for a period of four (4) months without cost to the employee and increases in the amount of insurance will be given under the Free Plan as though the employee were continuing in the Company's service."
It is evident that what the employer did in continuing the insurance for four months after induction was in compliance with and not in violation of this agreement. *Page 449 
This contract was superseded by a later one executed August 10, 1945, and by its terms made retroactive to January 26, 1944. The Military Service clause of the new contract did not repeat the quoted provision of the old contract but substituted a paragraph reading: "The Company agrees to continue in effect the present insurance provisions for employees while in military service." Obviously this could not undo what had already been done as to the certificates in suit. When the new contract was executed in 1945 there were no "present insurance provisions" in effect as to the employees involved here because the provisions as to them had been validly canceled.
Verdicts of no cause for action will be entered against the plaintiffs. Submit form of judgment in compliance with Rules
3:58 and 3:54-1. *Page 450