22 N.J. Super. 296 (1952)
91 A.2d 875
ALICE P. KEANE, PLAINTIFF-APPELLANT,
v.
AETNA LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, A CORPORATION OF THE STATE OF CONNECTICUT AND GENERAL ANILINE & FILM CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1952.
Decided October 3, 1952.
*299 Before Judges JAYNE, PROCTOR and SCHETTINO.
Mr. John A. Laird argued the cause for plaintiff-appellant (Mr. George A. Costello, attorney).
Mr. James J. Langan argued the cause for defendants-respondents (Messrs. Markley & Broadhurst, attorneys; Mr. Edward A. Markley of counsel and on the brief).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
This is an appeal from a summary judgment entered in favor of both defendants.
Plaintiff is the beneficiary named in a certificate issued to her husband, Anthony P. Keane, by defendant Aetna Life *300 Insurance Company of Hartford, Connecticut (hereinafter called "the insurer") under a group life insurance policy issued by the insurer to Keane's employer, the defendant General Aniline & Film Corporation (hereinafter called "the employer"). Plaintiff brought this action against the insurer upon the certificate and basic group policy to recover the sum of $8,000, the amount specified in the certificate. Alternatively she sought judgment against the employer on the charge that the employer breached its duty in respect hereinafter mentioned, as the result of which the insurance protection was lost.
The group policy was written under a plan whereby both the employer and employee contributed to the cost of the insurance. The policy provides for payment of the total premium by the employer, and requires the employer to collect the employee's contributions. To that end, Keane executed a form authorizing the employer to make a monthly deduction "from my wages or salary."
On June 17, 1949, Keane was laid off for lack of work. The employer paid the premium for the month of June, but made no payment on behalf of Keane thereafter. The policy contained a grace period of 31 days with respect to nonpayment of premium, and also permitted conversion to an individual policy within a like period after termination of employment. No application for conversion was made. Keane died on August 11, which was 11 days after the expiration of coverage on the thesis advanced by the insurer.
At the time of the lay-off, Keane was paid $70.40 in lieu of vacation. Subsequently, beginning four weeks after the lay-off, he was paid "severance pay" in four weekly installments, totaling $228.48, the last payment being made on August 8. The employer made deductions from those payments for unemployment insurance, social security benefits and income tax, but made no deduction for the insurance premium.

*301 I

CLAIM AGAINST INSURER
Plaintiff seeks to recover from the insurer upon two theses. The first is that Keane's employment was not terminated within the meaning of the policy; that the employer was bound to deduct the premium contribution from the vacation and severance pays; that the insurer is chargeable with the employer's failure on the hypothesis that the employer was insurer's agent for payment; and that there was a "clerical error" within the meaning of the policy provision. The second is that the insurer may not terminate an employee's coverage without notice of such termination and of his right to convert, and that no such notice was here given. We will take the contentions in the stated order.
The group policy provides:

"INDIVIDUAL TERMINATIONS
In the event any employee fails to make the required contribution for the insurance under this policy, the insurance of such employee will automatically cease at the end of the period for which contribution is made.
Insurance of any employee will automatically cease thirty-one days after termination of employment. * * * If an employee is absent on account of sickness or injury, or is temporarily laid off, granted leave of absence, pensioned or retired, employment shall be deemed to terminate when premium payments for such employee's insurance are discontinued."
It will be observed that under the quoted provisions, the insurance of any employee will terminate during his active employment if he "fails to make the required contribution." It is independently provided that insurance ceases 31 days "after termination of employment," but with respect to the classes of termination of active work set forth in the second sentence of the second quoted paragraph, the insurance may be continued but "employment shall be deemed to terminate when premium payments for such employee's insurance are discontinued." We note that with respect to this last provision, *302 the termination hinges upon the non-payment of premium rather than upon the employee's failure to make contribution, as in the case of the first quoted paragraph. We will return later to this difference of phraseology.
The initial step in plaintiff's first thesis is that Keane was temporarily laid off and that such termination of active work did not per se constitute a termination of employment within the meaning of the policy provision. The insurer asserts that the lay-off was permanent and hence resulted in termination of insurance 31 days after the lay-off whether or not premiums were paid.
The policy does not define the words "temporarily laid off" and hence necessarily shifts the inquiry to the transaction viewed as between employer and employee. We note that in the policy as originally drawn it was provided that "in any event employment shall be deemed to terminate not later than two months following cessation of active work when a lay-off or leave of absence exceeds a two months' period." The substitution by rider of a provision devoid of specific time limitation indicates that the period of lay-off during which employment may be deemed not to be terminated was intended to be a variable period ascertainable solely by the events which occur between employer and employee. Defendant's affidavits state that Keane was notified that he was being laid off for lack of work and would be "given notice to return for re-employment" if work became available. The Works Agreement between the employer and the union nowhere defines lay-offs in terms of temporary or permanent lay-offs. The Works Agreement refers to various types of terminations of active work, such as quits, discharges, leaves of absence, retirements and lay-offs. The comprehensive term, apparently including all separations from active work other than those specified, is lay-off.
The insurer relies strongly upon the circumstance that "severance pay" accrued, but we cannot attribute to that fact the finality which the insurer urges. The Works Agreement provides that "severance pay is intended to cover *303 lay-offs due to lack of work and not cases of quits or discharges." Excluded also are lay-offs "because of conditions beyond the control of the Company, such as fire, flood, earthquake, strikes, or inability to obtain necessary materials." The agreement then says:
"For employees permanently laid off because of lack of work who have been in our employ six (6) months, or longer, payments shall begin after the fourth week of lay-off." (Italics appear in the Works Agreement).
A subsequent provision sets forth a formula for the calculation of the severance pay. There follows a provision that severance pay shall "upon re-employment * * * cease with the payment for the last work day before rehiring" and "will be cancelled as of the date on which he was scheduled to return to work" if the employee refuses to return. As we read the Works Agreement, the right to severance pay depends upon the duration of the lay-off. If less than four weeks, none is payable. In short, the right of the employee to that pay is determined, not at the moment of lay-off, but by the subsequent duration of it. If the employer at the time of the lay-off for lack of work contemplated re-employment within three weeks, the lay-off would be no more or less temporary at the time of its occurrence than it would be if the period anticipated were five weeks. Hence, we cannot agree that the accrual of a right to severance pay bespeaks a permanent lay-off. We have not overlooked the word "permanently" in the passage quoted from the Works Agreement. In its context, at least on the record before us, we believe that it relates to the duration of the lay-off as time reveals it, because, as stated above, it seems clear that the employee's right to severance pay is determined by the actual duration of the lay-off rather than by any characterization of it which an employer may express to the employee (and here did not) at the moment of lay-off. The provisions of the Works Agreement relating to "continuous service" provide that a lay-off of less than 30 days shall not affect the employee's continuous service; that a lay-off in *304 excess of 30 days but less than 13 months shall not affect accumulated service, whereas a lay-off exceeding 13 months shall cancel all previously accumulated service credits. In these circumstances it cannot be said as a matter of law that the lay-off was permanent at its inception, and we observe that if it be deemed to be permanent four weeks or 30 days after its inception, the employment would then have terminated on July 15 or 17, and if we add the 31 days period prescribed in the first sentence of the second paragraph, we would reach a date of automatic cessation of insurance by reason of termination of employment beyond the date of Keane's death on August 11.
The insurer urges that the employer's privately held view of the nature of the lay-off should be controlling. We think not. The question whether the employee must receive notice of termination of employment was expressly left open in Ambrose v. Metropolitan Life Insurance Co., 18 N.J. Misc. 42 (Sup. Ct. 1939) (not reported in the State Reports). The results reached elsewhere appear to be in conflict. See Nick v. Travelers Ins. Co., 354 Mo. 376, 189 S.W.2d 532 (Sup. Ct. 1945); Jones v. Metropolitan Life Ins. Co., 156 Pa. Super. 156, 39 A.2d 721 (Super. Ct. 1944); Leavens v. Metropolitan Life Ins. Co., 135 Me. 365, 197 A. 309 (Sup. Jud. Ct. 1938); Ozanich v. Metropolitan Life Ins. Co., 119 Pa. Super. 52, 180 A. 67, reargument denied and opinion supplemented, 180 A. 576; (Super. Ct. 1935); Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 105 A.L.R. 413 (Sup. Ct. Err. 1935); Equitable Life Assur. Soc. v. Larocco, 68 F.2d 451 (3 Cir., 1933); Thull v. Equitable Life Assurance Soc., 40 Ohio App. 486, 178 N.E. 850 (Ct. App. 1931); Beecey v. Travelers' Ins. Co., 267 Mass. 135, 166 N.E. 571 (Sup. Jud. Ct. 1929); 29 Am. Jur., Insurance, sec. 1377; 105 A.L.R. 418, 419; 6 Couch, Cyc. of Ins. Law., sec. 1359; 1945 Cum. Supp., vol. 2, sec. 1359.
We think little can be gained by an extended analysis of those decisions or reference to points of difference which to *305 some extent might reconcile them. The policy arrangement here involved is not a mere gratuity to the employee. The employee contributes to its costs. Moreover the "Works Agreement" between the employer and the Union calls for this benefit. Reason requires the application of a principle which will give fair protection to the employee, consistent of course with the policy provisions. The policy speaks of "termination of employment." Obviously the employment cannot be terminated by notice by the employer to the insurer. The employment can be terminated only by notice given by the employer to the employee. In short, the insurer did not condition its liability upon notice to it of a termination but rather made its obligation depend upon an event between employer and employee. Hence, whether the employment was terminated must be determined by an appraisal of the facts as between the parties to the employment. This conclusion does not rest upon the premise that the insurer is under a duty to notify the employee of the termination of his insurance or of his right to convert. It rests squarely upon the proposition that the insurer contracted to be bound by what transpired between the employer and employee. As between the parties to the employment, obviously notice of termination by one of them to the other is necessary to accomplish that termination, absent other circumstances not here appearing.
We come, accordingly, to the question whether the employment terminated, within the meaning of the policy, by reason of the non-payment of premium upon Keane's insurance. We have pointed out that the quoted policy provisions differentiate between the employee's failure to contribute, referred to in the first quoted paragraph, and non-payment of premium referred to in the second quoted paragraph. We cannot assume that the two are merely alternate expressions of the same thing. The difference in language is deliberate. With respect to continued active employment, contribution by the employee protects him despite the employer's failure to pay the premium as to the employee (as *306 distinguished from a cancellation of the entire group policy for non-payment of the total premium upon all employees). But as to termination of insurance by reason of termination of employment, the insurer provided that non-payment of premium (which includes the employer's and employee's contributions) shall make the termination of active work a termination of employment within the meaning of that expression as there used. Hence, unless there is a "clerical error" which can lead to a contrary result, it must be held that Keane's employment terminated when payment to the insurer on his insurance was discontinued.
Plaintiff urges that the employer should be deemed to be the insurer's agent in this regard and hence the employer's failure is chargeable to the insurer. Reference is made to several policy provisions prescribing an administrative role in the employer which in other situations would be assumed by an insurer or its agent. But keeping in mind the unusual nature of a group policy and the probable effect of the employer's role upon the premium charge, we are not prepared to say that the employer, in performing such activities, is acting for the insurer rather than in its own interest as a party to the contract. In any event, it is impossible to say that the employer is the insurer's agent in making the very insurance payment as to which the employer is a contributor so that the employer's failure to do what it is required to do as a party to the contract shall somehow constitute performance of its terms.
Before considering the subject of "clerical error," it is convenient to consider the insurer's additional claim that Keane failed to contribute his share of the premium and hence, for that reason, his insurance terminated by virtue of the first quoted paragraph of the provisions relating to "Individual Terminations." The questions involved are whether vacation pay and severance pay are "wages or salary" within the meaning of the policy provision requiring deduction therefrom and the employee's authorization to deduct and, if they are such, whether something more than an *307 authorization by the employee for deduction is required of him.
Insurer contends that vacation pay and severance pay constitute benefits beyond the category of "wages or salary." Whatever may be the nature of such benefits for other purposes, we cannot hold as a matter of law that they do not constitute wages within the meaning of the documents here involved. Under the Works Agreement vacation pay and severance pay are earned. They depend upon the quantum of services performed. That for some purposes, as for example in labor negotiations, the parties may classify such pay as fringe benefits rather than basic wages, does not in itself destroy the affinity between them and work performed, and accordingly their proper inclusion within the generic term "wages." It cannot be said as a matter of law that such pay is not a wage or salary within the scope of the authorization and the policy. Proper collateral proof may demonstrate otherwise or raise an issue for the jury. Casriel v. King, 2 N.J. 45 (1949); N.Y. Sash and Door Co., Inc. v. National House and Farms Ass'n., Inc., 131 N.J.L. 466, 470 (E. & A. 1944). On the record before us, on a motion for summary judgment, the issue cannot be resolved against the plaintiff.
If vacation pay and severance pay thus constitute wages within the meaning of the policy and the employee's authorization to deduct, the employer's failure to deduct cannot constitute a failure by the employee "to make the required contribution for the insurance under this policy." The policy plainly contemplates no affirmative act upon the employee's part beyond the execution of the authorization. The employer's applications for the group policy, which is expressly made a part of the contract, requires the employer to deduct the contribution from the employee's wages or salary. Under the caption "Effective Date of Individual Insurance," it is provided that "Each eligible employee who has agreed to make the required contribution towards the cost of the insurance shall be insured in accordance with *308 the Insurance Schedule," subject to provisos not here pertinent. The theme of the policy, so far as individual terminations by reason of the employee's failure to contribute is concerned, is that the employee performs his obligation by agreeing to the deduction and by making available wages or salary from which the deduction may be made. Hence, the insurer's contention in this regard is untenable if, as stated above, vacation pay and severance pay constitute wages as we have held that they may be.
We return now to the question reserved above. We have held that the employer's failure to pay the premium upon Keane terminated his employment within the operation of the second paragraph of "Individual Termination" and that accordingly the insurer is entitled to prevail on that ground unless the insurance is saved by the provision relating to clerical error. The policy reads:
"The Employer shall keep a record with respect to each employee insured under this policy, showing the employee's name, sex, age or date of birth, the amount of insurance, the date insurance became effective, the amount of any increase or reduction in the insurance and the date it became effective, the beneficiary or beneficiaries designated by the employee and changes of beneficiary designations requested by the employee, the date insurance terminated, and such other data as may be necessary to carry out the terms of this policy. Said record, and all documents furnished to the Employer by the employee in connection with the insurance, together with the Employer's payroll and such other personnel records as may have a bearing on the insurance under this policy, shall be open for inspection by the Insurance Company at all reasonable times.
Clerical error in keeping the records shall not invalidate insurance otherwise validly in force nor continue insurance otherwise validly terminated, but upon discovery of such error an equitable adjustment of premiums shall be made.
The Employer shall furnish the Insurance Company with all information and proofs which the Insurance Company may reasonably require with regard to any matters pertaining to this policy."
We feel that this question should not be resolved upon a motion for summary judgment. The provision respecting clerical error is manifestly for the benefit of both employer and employee and presumably was designed to prevent forfeiture of insurance because of errors, including errors *309 relating to the payment of premiums. In one sense, the employer's decision not to pay the premium may seem to be quite deliberate and free from clerical error. On the other hand, the employer claims to have given notice to Keane of termination of his insurance (and we hereinafter conclude that the employer was under a duty so to do). If it should be found that such notice was not given despite the employer's purpose to give it (and we find as hereinafter set forth that a jury question exists as to whether the notice was given), it may then appear that in entering upon its records the termination of the insurance, the employer, by reason of an error clerical in nature, made an entry which it would not have made had it known that its representative may have failed to follow the prescribed procedure. There may be evidence available of the practical construction of the clerical error provision which will throw light upon its span. Upon a trial the issue may well develop to be one for the jury, and upon the present record cannot be held to be one of law to be resolved in favor of the insurer.
With respect to plaintiff's second broad approach, that the insurer could not terminate Keane's insurance without notice to him, we find nothing explicit or implicit in the contract to support that contention. The proposition urged goes beyond the position considered above as to whether employment can be terminated by the employer without notice to the employee. Plaintiff's contention would require the insurer to give notice of termination of the policy, even though the employment was terminated by adequate notice from employer to employee or by reason of non-payment of the premium as provided in the second paragraph under "Individual Terminations." The insurer nowhere conditioned its obligation upon such notice and we cannot revise the contract to embody that obligation. Zaunczkowski v. Travelers Ins. Co., 3 N.J. Super. 442, 66 A.2d 463 (N.J. Super. Ct. 1949).
We note that N.J.S.A. 17:34-32.2, which was added by section 3, chapter 301 of the Laws of 1950, furnishes a *310 measure of such protection to an employee who is not notified of the existence of his right to convert. That statute is expressly inapplicable to the present controversy by reason of the circumstance that the policy here involved antedates the statute's effective operation. In reaching the view expressed in the preceding paragraph, we draw no inference from the enactment of that provision as to the state of the prior law. Rather, our conclusion rests upon the absence of any basis upon which the insurer can be said, in the absence of statute, to have the claimed obligation.

II

CLAIM AGAINST EMPLOYER
If the insurer is liable, the employer cannot be. But under the views expressed above, the insurer may prevail upon trial and hence we must consider the claim asserted against the employer. The claim rests upon two contentions: (1) that the employer wrongfully failed to pay the premium, and (2) the employer breached a duty to give notice of the termination of insurance rights. The second contention is not pleaded but was the subject of proof by affidavit and apparently was deemed to be in issue. The contention did not fail for pleading deficiency, and since the issue was raised by affidavit, leave to amend would doubtless have been granted if the sole difficulty were one of pleading. Hence, we deem the question to be before us.
The first contention assumes that the employer was bound to continue the premium payments, that is, make its own contribution to the premium, during a period of temporary lay-off. The policy itself contains no such undertaking. Nor do we find it in the Works Agreement. The latter agreement provides that "Group Life Insurance is available to all employees immediately after three (3) months' service at which time no medical examination is required." It continues: "This insurance is contributory, payments being shared by the company and the employee." But in what circumstances must the employer contribute its share? Must *311 the employer contribute during periods of lay-off so long as there are wages or salary from which the employee's share may be deducted? Must the employer contribute until such time as the employee's right to convert comes into being, that is, until a temporary lay-off becomes permanent? We cannot find any basis in the present record to spell out the asserted obligation. Whether upon trial competent proof may be introduced to define the employer's obligation in this regard, we express no view. But the uncertainty manifest in this setting is a potent factor in support of plaintiff's second contention that when active work is thus terminated by an employer in the additional circumstances of this case, there should be clear-cut advice by the employer to the employee that the employer's role is at an end and that the employee must seek to convert if he desires to continue his protection.
There is little authority with respect to an employer's duty to give notice of termination of insurance coverage. The existence of that duty where the group policy is non-contributory and deemed to be merely a gratuity, has been denied. See Colter v. Travelers' Ins. Co. & American Woolen Co., 270 Mass. 424, 170 N.E. 407 (Sup. Jud. Ct. 1930); Kowalski v. Aetna Life Ins. Co., 266 Mass. 255, 165 N.E. 476, 63 A.L.R. 1030 (Sup. Jud. Ct. 1929); Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 55 A.L.R. 1231 (Sup. Ct. 1927); 55 A.L.R. 1245, 1248.
But the policy here involved is a contributory one. The employee paid for insurance. He bought a valuable right to convert upon termination of his employment. Plaintiff urges that the employer was the agent of Keane with respect to Keane's relation to the insurer, citing Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937) and Kloidt v. Metropolitan Life Ins. Co., 18 N.J. Misc. 661, 16 A.2d 274 (Sup. Ct. 1939), and accordingly owed a duty "to serve his principal to the best of his skill, knowledge, ability and judgment." LeGendre v. Byrnes, 44 N.J. Eq. 372, 375 (Ch. 1888). Plaintiff urges that the employer's duty as agent includes the obligation to *312 notify the employee that his rights under the policy will terminate unless he applies to convert.
We hesitate to prescribe the point at which an employer under a group policy ceases to act merely in its own interest and assumes the role of an agent for the employee. We do, however, think that the employer has a duty in the premises and that it arises from the contractual position of the parties without regard to technical principles of agency. The employer negotiated the policy. The employer assumed a substantial administration role in the operation of the plan. The employee's knowledge may be assumed to be comparatively meagre. Unless the employer is charged with some obligation, a socially significant plan of protection may be lost in the ambiguity and obscurity which may attend, and here is claimed to have attended, the termination of the active work of the employee.
Where an employee's work ceases and no pay of any kind is forthcoming from which a deduction may be made for his contribution, it is fair to assume that the employee knows that unless he takes some step his policy rights will cease. Cf. Zaunczkowski v. Travelers Ins. Co., 3 N.J. Super. 442, 66 A.2d 463 (N.J. Super. Ct. 1949). But where, as here, the lay-off might be but temporary and the employee knows that vacation and severance pays may accrue in time to permit a deduction for his share of premiums, and did in fact so accrue, and where there is obscurity as to whether the employer, obligated or not, will continue the contributions to the premium, we think a duty existed in the employer to spell out plainly the position it intended to take as to the continuance of the insurance. It could not in these special circumstances place a private interpretation upon the events and withhold from the employee its conclusion that coverage would be terminated.
We refer again to N.J.S.A. 17:34-32.2. The enactment of that provision does not negate the prior existence of the duty which we find in these circumstances to have existed even in the absence of a statutory provision, although it may *313 well be that the statute supersedes the duty here found as to policies within its operation.
We add that we are aware of decisions elsewhere which hold that a duty to give such notice runs, if at all, to the employee and not to the beneficiary named by the employee. See Spartan Aircraft Co. v. Coppick, 201 Okl. 522, 207 P.2d 790 (Sup. Ct. 1949); Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 55 A.L.R. 1231 (Sup. Ct. 1927). It seems to us that in dealing with a certificate of insurance upon which the employee has designated a beneficiary with the manifest intention that the named beneficiary shall benefit, no sound reason exists why the law should defeat that purpose by application of concepts which in other settings may foster justice but here would defeat it.
Hence we reach the final question. Did the employer give notice to Keane of the termination of his insurance protection? Defendant's affidavits assert that notice was given and in fact in a writing which so advised and additionally informed him of the steps required for conversion. However, the affiants for defendant could not recall the events of Keane's lay-off. They state that all employees laid off were so advised. Some 600 men were laid off at that time. Plaintiff's affiants state that they were present when about 200 of the men were laid off and that no such advice was given except in those instances in which the employee expressly made inquiry. Keane, of course, is dead. In this posture of the evidence we think a jury question exists as to whether notice was given.
It may be added that if, as the employer's affidavits would suggest, the employer in fact inaugurated a practice, wholly voluntary, of notifying employees upon lay-off of termination of insurance, and that practice was so established and known that Keane may be found to have relied upon it, the employer may be found to have voluntarily assumed an obligation to give notice which would continue until terminated by appropriate announcement of an abandonment of that practice.
Judgment reversed for further proceedings not inconsistent with this opinion.