FRANK J. SHAFFER, PLAINTIFF-RESPONDENT, v. METRO-
POLITAN LIFE INSURANCE COMPANY, DEFENDANT-
APPELLANT.

Submitted October 3, 1944—Decided May 21, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and
PERSKIE.

For the plaintiff-respondent, cross-appellant, *Drewen &
Nugent.*

For the defendant-appellant, cross-respondent, *Morris Edel-
stein* and *Thomas F. Meehan.*

The opinion of the court was delivered by

DONGES, J. These cross-appeals bring up judgments of
the Hudson County Court of Common Pleas in a suit to
recover the amount alleged by plaintiff to be due on a policy
of insurance issued by defendant.

On February 19th, 1921, defendant issued a group policy
insuring employees of Mutual Chemical Company who quali-

fied for the insurance, and to whom certificates of coverage under the policy were issued. It also provided for payment to the holders of valid certificates of total and permanent disability benefits. The plaintiff admittedly was an employee of Mutual Chemical Company and received certificates in the amount of $3,000. It was for this amount that plaintiff brought suit.

Plaintiff became an employee of the Mutual Chemical Company in August, 1922, as a storekeeper, and subsequently as a timekeeper. He continued in this employment until August 31st, 1929, when his employment ceased. On or about November 25th, 1929, he resumed his work at the same position and continued until May, 1930, when he was obliged to suspend his work, having contracted lobar pneumonia. He resumed his duties in August, 1930, and worked until April 16th, 1932, when he was discharged.

During the plaintiff's first years of employment with Mutual Chemical Company he received two participation certificates, one on February 7th, 1923, for $500, numbered "Serial 758," and on September 19th, 1925, one for $1,000, "Serial 758-A," both under group policy No. 190-G. On May 1st, 1930, the defendant issued to plaintiff a certificate for $500, known as "Serial 1822," and on May 19th, 1930, issued another certificate to plaintiff in the sum of $500, known as "Serial 1822-A," and on November 1st, 1930, defendant issued another certificate to plaintiff in the sum of $500, known as "Serial 1822-A." All of these certificates were subject to the terms and conditions prevailing under group policy of insurance No. 190-G.

Plaintiff seeks to recover the sum of $3,000, the aggregate of certificates issued to him. The defendant denies liability for all of the claimed amount. The trial judge granted defendant's motion for a directed verdict on certificate No. 758 and the certificate or rider No. 758-A on the ground that they were not in force and effect. It is from this action that plaintiff appeals. Defendant's motion for a directed verdict as to certificate No. 1822 and the two numbered 1822-A was denied. The jury found in plaintiff's favor on these three certificates and it is from this verdict and consequent judgment that defendant appeals.

The sole ground of appeal of plaintiff is from the granting of defendant's motion for a direction of a verdict in its favor on the earlier issued certificates, and the sole ground of appeal of defendant is from the refusal of defendant's motion for direction of a verdict in its favor on the later issued certificates.

Provisions in the certificates issued by defendant to plaintiff on February 7th, 1923, and on May 1st, 1930, read:

"During the continuous employment of the employee by the employer, the amount of insurance shall be increased until a maximum of Fifteen Hundred dollars has been reached, the amount thereafter remaining fixed, such increase being as entered in the schedule on the fourth page hereof in accordance with the stipulations therefor in the application of the employer."

"Privilege of Continuance.

"In the event of the termination of the employment for any reason whatsoever, the employee shall be entitled to have issued to him by the Metropolitan Life Insurance Company, without further evidence of insurability, and upon application made to that Company within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the Policy at his then attained age, a Policy of life insurance in any one of the forms customarily issued by such Company, term insurance excepted, in an amount equal to the amount of his protection under the Group Insurance Policy at the time of such termination."

The group policy issued to the employer, known as No. 190-G, contained a provision in substance as last mentioned. It also provided:

"Upon termination of active employment, the insurance of any discontinued employee under this Policy automatically and immediately terminates and the Company shall be released from any further liability of any kind on account of such person unless an individual policy is issued in accordance with the above provision. Re-employment will be classed as new employment in accordance with paragraph 4 hereof and will be subject to the issuance of a new certificate."

Plaintiff never applied for a policy of life insurance under these provisions.

The proof is that plaintiff did not work for Mutual Chemical Company between August 31st, 1929, and November 25th, 1929. Plaintiff testified that on August 31st, 1929, Mr. Heller, his superior, told him that his services were no longer required. He further testified that Mr. Heller "re-hired" him on November 25th, 1929, and that he continued in service until April, 1932, except for a period of ten weeks when he was disabled by pneumonia. Mr. Heller testified that plaintiff was discharged and re-hired. Plaintiff sought later in his testimony to qualify his statement somewhat, but left no doubt that he was discharged and re-hired.

This testimony, coupled with other circumstances hereafter referred to, clearly indicates that plaintiff left the employ of the assured company. It is further supported by the content of the letter to plaintiff from his employer, presenting the certificate, which said: "The insurance is written with the Metropolitan Life Insurance Company, which has issued to you the Certificate on the front page hereof, and is subject to your remaining in our employment."

The further undisputed fact that the maximum insurance to an employee was $1,500, and that, upon resuming work a new certificate was issued to and accepted by plaintiff, with like conditions and with a letter as above stated, clearly indicates that both the employer and employee regarded the resumption of work by plaintiff on November 25th, 1929, as new employment.

We conclude that the appeal of plaintiff is without merit and that the judgment in favor of the defendant on its motion for directed verdict should be affirmed.

The defendant asserts there was no question of fact which could properly be submitted to the jury because there was a lack of evidence of total and permanent disability during the period of coverage of the certificates issued under the group policy of insurance.

The policy contained the following provision:

"7. *Total and Permanent Disability Benefits.*—

"On receipt by the Company * * * of due proof that any Employee insured hereunder has become wholly and per-

manently disabled by accidental injury or disease, before attaining the age of sixty years, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, the Company * * * will pay to such Employee during such disability, * * * .and in lieu of the payment of insurance as herein provided, such monthly or yearly installments as may be selected by such Employee by written notice to the Company * * * the first installment to be paid six months after receipt of due proof of total and permanent disability. * * *"

The plaintiff testified that following the attack of lobar pneumonia his legs were swollen and continued so. This was corroborated by defendant's physician, who saw him almost daily following his return to his employment in 1930. There was testimony that plaintiff, prior to his discharge from his employment, was in bad physical condition and unable to perform his usual duties. A physician called by plaintiff testified that, in his opinion, plaintiff was unable to do any labor, and that he was totally and permanently disabled from 1930. There was testimony that following plaintiff's release from the hospital and his return to his work for Mutual Chemical Company, he was unable to perform physical work; that he sat in a chair in the storeroom and directed his assistants; and that until his discharge his duties were almost entirely directory.

Following his discharge from the above mentioned employment he performed no labor for five or six years, and then he sought several positions, but did not remain long or do arduous work. He finally was designated superintendent of several apartment houses, but the testimony of plaintiff and his witnesses is that, while he occupied the position or status of superintendent, he did not perform physical labor to any marked degree. His work was supervisory and not laborious. There was some contradiction of this testimony by defendant's witnesses. We conclude that there was testimony from which the jury might determine that from May, 1930. there was a condition that grew progressively worse and that. prior to the termination of the employment covered by defendant's policy and certificates, plaintiff was wholly and permanently disabled from following a gainful occupation. They might

have determined to the contrary. The question is whether there was a question of fact which properly should be submitted to the jury.

Defendant-appellant argues that plaintiff demonstrated by employment subsequent to his discharge by Mutual Chemical Company that, inasmuch as he was able to procure some employment, he was not wholly incapacitated under the policy. This view has not been adopted by our courts. The test, as approved in *Nickolopulos* v. *The Equitable, &c., Co.,* 113 *N. J. L.* 450, is whether the insured was "so affected by his bodily disability that he was thereby prevented from performing any work for compensation of financial value in his regular business and in any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue." *Cf. Gross* v. *Commercial Casualty Insurance Co.,* 90 *Id.* 594; *Doherty* v. *American Employers' Insurance Co.,* 112 *Id.* 52; *Woodrow* v. *The Travelers Insurance Co.,* 121 *Id.* 170; *Raub* v. *Mutual Life Insurance Co.,* 126 *Id.* 164; *Booth* v. *United States Fidelity and Guaranty Co.,* 3 *N. J. Mis. R.* 735.

As stated, we conclude that there was testimony from which the jury might properly decide that plaintiff was continuously and wholly disabled and prevented from a time covered by the policy from performing any work for compensation or profit, within the terms of the policy.

Nor do we think that the answer to the bill of particulars pointed to by the appellant was so specific as to bar the claim of plaintiff that his disabiilty arose during his employment or to require the direction of a verdict for the defendant, especially in view of the manner in which the case had been tried and the failure of counsel to attempt to limit plaintiff's proofs in this regard. No challenge of the proofs was entered during the taking thereof and the only ground of appeal, as above stated, is failure to direct a verdict for defendant. We are of opinion a direction would not be warranted upon the ground now urged.

The trial judge, therefore, properly denied defendant's motion to take the case from the jury, and the judgment should be affirmed.