31 N.J. Super. 362 (1954)
106 A.2d 748
SOPHIE B. MAU, PLAINTIFF-APPELLANT,
v.
THE UNION LABOR LIFE INSURANCE COMPANY, A DULY ORGANIZED LIFE INSURANCE COMPANY EXISTING UNDER THE LAWS OF THE STATE OF MARYLAND AND AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1954.
Decided June 30, 1954.
*363 Before Judges EASTWOOD, FREUND and FRANCIS.
*364 Mr. Arthur A. Donigian argued the cause for the appellant.
Mr. Lionel P. Kristeller argued the cause for the respondent (Messrs. Kristeller & Zucker, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
This matter is before the court on appeal from a judgment which arose from a determination that the insurance policy in suit had lapsed for non-payment of premium. By consent of the parties, the action had been submitted to the trial court on the pleadings, pretrial order, interrogatories and answers thereto.
The record discloses that respondent Union Labor Life Insurance Company issued a policy of life insurance, effective July 1, 1948, to the decedent Albert C. Mau. It is a 12-months' term policy with a death benefit of $1,000, and is self-described on the face thereof as a "12-Months Term Policy, Special Conversion Option  Special Renewal Option, Annual Distribution of Divisible Surplus." On the reverse side in Schedule A the number is given as WT-18 Ctf. No. 57. Mau's wife, appellant here, is named as beneficiary, and with respect to premium the following appears:
 "Premium
 $ Quarterly
 Payable
 Averaged."
There is no other statement in the contract as to the amount of the premium or how it shall be paid.
The face of the policy says:
"The consideration for this insurance is the payment in advance at the Home Office of the Company, of the premium specified in said Schedule A * * *."
It further provides:
"This policy is participating and is entitled to a share in the surplus or profits of the Company as voted annually by the Board of *365 Directors. Such dividends shall upon the request of the Insured be applied to the reduction of premium payments, otherwise they shall be payable in cash."

* * * * * * * *
The policy and the application therefor, copy of which is attached hereto, constitute the entire contract."
At the time of the issuance of the policy, Mau was in the employ of Rockland Concrete Sales Co., Inc. The employer paid the premiums, the last payment being made on October 2, 1948, for the quarter ending January 2, 1949. No premiums were ever paid thereafter.
Mau terminated his employment with Rockland on January 17, 1949, and he died June 1, 1949, which was within the one-year term of the policy.
The position of the insurer is that the instrument on which the suit is brought is not a policy but simply a certificate indicating that the employer held a group policy on its employees under which Mau was insured. Further, the defense is that when Mau's employment ceased he was obliged to convert the certificate to an individual contract and to pay the premiums thereon as they became due if he wished to continue the coverage. And since the premiums are payable quarterly, the certificate lapsed as of January 2, 1949.
The difficulty with the defense is that there is no proof whatever in the record that the employer had a master group policy and that the contract which was before the trial court was simply a certificate depending for its efficacy upon the terms of a master policy. It was suggested at the oral argument that judicial notice should be taken that the inscription "WT-18 Ctf. No. 57" inserted under the designation "Number" indicates the existence of an employer's group insurance contract. We are aware of no precedent for any such extension of the doctrine of judicial notice. In any event, "WT" is said to mean "wholesale term" (although the record does not say so). How this calls attention to the existence of group insurance we fail to perceive.
*366 An example of the manner in which an employer's master group policy is integrated with an employee's subordinate certificate appears in Venditto v. Spratt's Patent (America), Ltd., 113 N.J.L. 357 (Sup. Ct. 1934). There the former Supreme Court in describing the certificate involved said:
"* * * Venditto, like other employees, had his individual `certificate' numbered 100, based on, and expressly referring to, the main policy. This certifies, among other things, that the Prudential Company, in accordance with and subject to the terms of G 2875, has insured the life of Venditto, `an employee included in the said group,' for $1,000: * * *." (113 N.J.L. 358, 359.) (Emphasis supplied.)
If the policy in question were in fact a part of such a group plan and were in some way integrated with it and dependent for its efficacy as insurance upon it, it would have been a simple matter to provide proof of the fact at the pretrial conference or when the matter was submitted to the trial court for determination. But no such course was taken.
The decision of the trial court says that "the policy in question came into being as part of the insurance plan existing on July 1, 1948, among the employees of the employer of Albert C. Mau, viz: Rockland Concrete Sales Co., Inc.; * * *." The record has been searched in vain for any such evidence and none was pointed out to us at the argument.
The fact is, so far as the proofs show, that the contract is specifically called a policy and that it and the application constitute the entire contract between the parties.
There is no language in the policy which required Mau to convert it into an individual contract upon the cessation of his employment. So far as the policy shows, it is an individual contract. And the only provisions with respect to conversion say:
"At any time while this policy is in force and within 30 days after the termination of insurance under this policy it may, upon written application of the insured and legal surrender of the policy to the company, be converted, without further evidence of insurability, into any other form of policy, issued by the company, except a *367 policy of term insurance, (but not including total and permanent disability benefit), in an amount equal to the amount of insurance under this policy, upon the payment of the company's premium charged for such policy at the date of conversion at the age of the insured on such date."
And further:
"On the expiration of the original term for which this policy was written, this policy may be renewed for additional successive similar terms by agreement between the insured and the company."
Moreover, this policy does not conform with the statute dealing with group life policies. R.S. 17:34-32(i), as am. L. 1946, c. 16, which was applicable in 1948, provides that in connection with employer-employee group life policies, the insurer shall issue to the employer for delivery to the employee whose life is insured "an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom benefits are payable, and the rights to which he is entitled in accordance with paragraphs `m' and `n' of this section."
The provision required by section "m" to be contained in such certificates is:
"m. That in case of termination of employment for any reason whatsoever every employee shall be entitled to have issued to him by the company, without evidence of insurability, upon application made to the company, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, within thirty-one days after such termination of employment, a policy of life insurance effective at the end of such period of thirty-one days following such termination during which period the death benefit provided by the insurance protection terminated under the group insurance policy shall remain in force, in any one of the level premium forms customarily issued by the company, except term insurance, in an amount equal to the amount of his protection terminated under the group insurance policy because of such termination of employment."
Although, as set forth above, the policy contains a provision for conversion which includes some of the requirements of the quoted subsection, no reference is made to termination of employment, or to any possible effect such termination *368 may have on the coverage or to the need for affirmative application by the insured to the carrier to convert in the event of cessation of employment.
Appleman, Insurance Law and Practice, points out that
"Nearly all group insurance contracts provide either that at the termination of the employment or at a certain fixed period of time thereafter the insurance will automatically cease to be effective." Vol. 1, § 121, 125 (1941).
This is borne out by the cases in our reports in which such policies were involved. Keane v. Aetna Life Ins. Co., 22 N.J. Super. 296, 301 (App. Div. 1952); Zaunczkowski v. Travelers Ins. Co., 3 N.J. Super. 442, 445 (Law Div. 1949); Shaffer v. Metropolitan Life Ins. Co., 133 N.J.L. 53, 55 (Sup. Ct. 1945); Venditto v. Spratt's Patent (America), Ltd., supra, 113 N.J.L. 357, 359 (Sup. Ct. 1934). And see 6 Couch, Cyclopedia of Insurance Law, § 1359 (1930). The 1950 amendment to the section of our statute (L. 1950, c. 301, p. 1019), probably was brought about by a recognition of the practice of including such a termination clause. The amendment requires a provision in a certificate issued to an employee for optional conversion by him if the coverage ceases because of termination of employment. N.J.S.A. 17:34-32(9).
Under the circumstances, we are constrained to hold that Mau's policy is an individual one-year term contract, running from July 1, 1948 to July 1, 1949, and so far as the proof shows, neither related to nor dependent upon any other policy.
It remains, therefore, to determine whether the policy was in force at the time of death. The stipulation is that the last premium was paid on October 2, 1948, for the period ending January 2, 1949. Whether the coverage had lapsed at the death five months later depends upon the nature of the insured's obligation with respect to payment. No fixed premium was set forth in the policy; it was to be an "averaged" premium, apparently because the policy is a participating one, that is, entitled to share in the surplus or profits of the company as voted by the board of directors. And the *369 insured had the option of applying the dividends to premium payment or receiving the cash.
In this situation, Mau was entitled to notice of the amount of his premium obligation before the policy could be forfeited. The general rule in this regard is stated in 29 Am. Jur., Insurance, § 417, p. 353, as follows:
"Where, by the terms of an insurance policy, the insured is entitled to share in the profits of the company and to have his premiums discharged pro tanto by such dividends as are declared from time to time, the insurer cannot insist on a forfeiture of the policy for non-payment of a premium until he gives notice of the amount of the dividend apportioned to the policy in order that the insured may know what amount in cash he is required to pay to discharge the premium."
To like effect are Couch, supra, vol. 3, § 667, p. 2192; Annotation, 140 A.L.R. 684; Phoenix Mutual Life Ins. Co. v. Doster, 106 U.S. 30, 1 S.Ct. 18, 27 L.Ed. 65 (1882).
It is conceded that no such notice was given by the insurer. Accordingly, since the death occurred within the one-year term of the policy, a lapse had not occurred and the beneficiary is entitled to payment of the death benefit.
The judgment is reversed and the action remanded with directions to enter judgment in favor of appellant.