67 N.J. Super. 248 (1961)
170 A.2d 482
SALVATORE MANCUSO AND RUBY MANCUSO, PLAINTIFFS,
v.
LEONARD ROTHENBERG, THIRD-PARTY PLAINTIFF-RESPONDENT, AND
ALFRED BENDER AND LOUIS BENDER, DEFENDANTS,
v.
MOTORS INSURANCE CORPORATION, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1961.
Decided May 2, 1961.
*250 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Louis Chivian argued the cause for third party defendant-appellant (Messrs. Chivian & Chivian, attorneys; Mr. Louis Chivian, of counsel).
Mr. Albert S. Parsonnet argued the cause for third party plaintiff-respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiffs Salvatore Mancuso and Ruby Mancuso, co-owners of a Fiat automobile, were insured against damages thereto, less $50 deductible, by Emmco Insurance Company (hereinafter referred to as Emmco).
On August 5, 1959 at 3:45 A.M., defendant Leonard Rothenberg, with the permission of the plaintiffs, was driving *251 the Fiat, on a mission for his own benefit, when he became involved in a collision with another car owned by the defendant Alfred Bender and operated by his agent, defendant Louis Bender. The Fiat car was damaged. At the time of the accident, defendant Rothenberg owned a Plymouth automobile (not involved in the accident). He was at that time insured by Motors Insurance Corporation (hereinafter referred to as Motors) against damage from collision, less $50 deductible. This coverage extended to his Plymouth automobile and to any non-owned vehicle which he might have the occasion to operate.
The plaintiffs collected their loss (less $50) from Emmco, and instituted suit against Rothenberg for the full amount thereof, for the benefit of their carrier Emmco, as subrogee, and for themselves as to the $50 deducted. Defendant Rothenberg, pursuant to Order for leave to file third-party complaint impleaded his insurance carrier, Motors, as a third-party defendant. Motors denied liability, maintaining that its policy did not afford coverage to the defendant Rothenberg relative to the matters set forth in the third-party complaint, that collision insurance covering the Fiat was issued and loss thereunder paid by Emmco (less $50), and that, under the circumstances, its coverage was excess insurance. The limits of the Emmco policy had not been exceeded.
The damages to the Fiat car were stipulated by the plaintiffs and the defendant Rothenberg to be $552.73. Motors agreed that such figure represented a fair and reasonable value of the repairs to the car. There was an additional towing charge of $25 covered by the policy of Motors. The case was tried without a jury, and the court found that there was no negligence on the part of the defendants Benders and, on their motion, without objection, judgment was entered in their favor. The court further found that the sole negligence and proximate cause of the accident rested with Rothenberg, and, accordingly, found for the plaintiffs and entered judgment against the defendant Rothenberg in *252 the amount of $552.73. The court also found that the insurance policy of Motors "was issued for the protection of Rothenberg, not on a Fiat," and entered judgment for Rothenberg on the third-party complaint against Motors for $527.73, representing damages of $552.73 plus $25 towing charges less $50 which was deductible.
The contract of insurance contained a statement in bold red print: "This Policy DOES NOT PROVIDE bodily injury and property damage liability insurance or any other coverage for which a specific premium charge is not made, and does not comply with any Financial Responsibility Law." The declaration page of the policy indicates that premiums were paid for coverages including "E Collision or Upset (actual cash value less $50 deductible)" and "F Towing and Labor Costs." Under that portion of the policy relating to "Insuring Agreements," there is a provision as to "Coverage E  Collision" by which the insurance company agreed:
"To pay for loss caused by collision to the owned automobile or to a non-owned automobile but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto."
Specific exclusions are enumerated, and item (c) is invoked. It reads: "to loss to a non-owned automobile arising out of its use by the insured in the automobile business." The recited conditions of the policy include, inter alia, a paragraph captioned "13. Other Insurance," which provides:
"If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
It is uncontroverted that Rothenberg did not have any other collision insurance and that he was operating a *253 non-owner's vehicle when the accident occurred. The court found as a matter of fact, supported by ample evidence, that he was engaged in a pleasure trip at the time of the accident, and that the loss sustained did not arise under circumstances that could be construed within the policy exclusion "use by the insured in the automobile business." Accordingly, the primary liability of Motors under the quoted provision of "Coverage E  Collision" is beyond question.
On the other hand, quoted condition 13 presents disputed language for construction. Motors maintains: (1) this provision is not limited to insurance by and for the insured; (2) the words "other insurance" as therein used should be liberally interpreted; and (3) the clause "provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance" is a lawful limitation which should be construed to mean "irrespective of whether other such insurance was procured by persons other than the named insured." In support of its contentions, reliance is placed upon Woodrich Construction Co. v. Indemnity Ins. Co., 252 Minn. 86, 89 N.W.2d 412 (Sup. Ct. 1958). That case, however, is distinguishable in that it dealt with comprehensive liability and not collision insurance. Moreover, four employers' comprehensive general liability policies were before the court for analysis, comparison and construction, and each of the four policies contained an "other insurance" clause.
The theory of Motors' defense at the trial level was that exclusion "C" of its policy relieved it of liability, and that, in any event, under condition 13 Motors could only be liable for excess insurance as the Fiat car was covered by an Emmco policy allegedly valid and collectible.
The court below found against Motors, and determined that the "Fiat was not at the time of the accident being used in the automobile business of Rothenberg." Accordingly, exclusion "C" of the Motors' policy was not applicable. With respect to condition 13 of the policy, the court held:
*254 "If Motors intended this clause to apply to the present situation, it would have been very easy to have added after the words `over any other valid and collectible insurance,' the words `on a non-owned automobile.'
To interpret the clause in the manner described by Motors is to my mind to add something to it which it presently does not contain.
If there be ambiguity in the clause or paragraph, that ambiguity must be resolved under established principles against Motors who prepared and issued the policy.
This policy was issued for the protection of Rothenberg, not on a Fiat. He was entitled on reading it to believe he possessed coverage not only on his owned Plymouth but on non-owned automobiles.
To leave him without such coverage and with a judgment against him for the damage done to the Fiat, is in my view to leave him without protection which he has properly paid.
There is no double recovery here as the defendant argued.
The Mancusos I have found are entitled to recover against Rothenberg. And it is accidental that in that recovery Emco, their carrier, shares.
I conclude that Paragraph 13 neither prevents recovery by Rothenberg against Motors nor limits such recovery."
Condition 13 should be read in its entirety. It is a single paragraph commencing: "If the insured has other insurance * * *." There is no language present that would indicate an intent to include insurance other than what the insured has. The judicial authorities have consistently held that ambiguous or doubtful language in an insurance contract must be construed "most advantageous to the assured." Gross v. Commercial Casualty Ins. Co. of Newark N.J., 90 N.J.L. 594, 599 (E. & A. 1917); Zurich General Accident & Liability Ins. Co. Ltd., v. American Mutual Liability Ins. Co. of Boston, 118 N.J.L. 317, 321 (Sup. Ct. 1937); Fleming v. Connecticut General Ins. Co., 116 N.J.L. 6, 15 (E. & A. 1935). "The court will not write better or more favorable contracts for parties than they have themselves seen fit to make." Marone v. Hartford Fire Ins. Co., 114 N.J.L. 295, 297 (E. & A. 1934); Kupfersmith v. Delaware Insurance Co., 84 N.J.L. 271 (E. & A. 1912).
*255 In Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599 (App. Div. 1956), this court observed that the rules of construction applicable to contracts of insurance are fairly uniform and it made reference to several case decisions and other authorities respecting such rules, citing the case of Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238 (App. Div. 1952), wherein it was said at pages 242-243:
"It is, of course, the almost universal rule that insurance contracts must wherever possible be liberally construed in favor of a policyholder or beneficiary thereof, and strictly construed against the insurer in order to afford the protection which the insured sought in applying for the insurance. Snyder v. Dwelling-House Insurance Co., 59 N.J.L. 544 (E. & A. 1896); Cohen v. Mutual Benefit Health and Accident Assn., 134 N.J. Eq. 499 (Ch. 1944); cf. Caruso v. John Hancock Mutual Life Ins. Co., 25 N.J. Misc. 318 (Sup. Ct. 1947), affirmed 136 N.J.L. 597 (E. & A. 1948). If the meaning of the words employed is doubtful or uncertain, or if for any reason any ambiguity exists either in the policy as a whole of in any portions thereof, the insured should have the benefit of a favorable construction in each instance. Harris v. American Casualty Co., 83 N.J.L. 641 (E. & A. 1912); Kissinger v. North American Union Life Assur. Society, 108 N.J.L. 405 (E. & A. 1932); Weiss v. Union Indemnity Co., 107 N.J.L. 348 (E. & A. 1931). And if the policy contains inconsistent or conflicting provisions, the courts will give effect to the provision which gives the greater benefit to the insured. Nuzzi v. U.S. Casualty Co., 121 N.J.L. 249 (E. & A. 1938). Where, from the language of the policy, it is possible to adopt either of two reasonably consistent interpretations, that construction will be adopted which permits recovery, rather than the one which would deny coverage. Lower v. Metropolitan Life Ins. Co., 111 N.J.L. 426 (E. & A. 1933), reversing 10 N.J. Misc. 1236 (Sup. Ct. 1932); Fleming v. Conn. General Ins. Co., 116 N.J.L. 6 (E. & A. 1935); Krieg v. Phoenix Ins. Co., 116 N.J.L. 467 (E. & A. 1936), reversing 13 N.J. Misc. 555 (Sup. Ct. 1935); cf. Jorgensen v. Metropolitan Life Ins. Co., 136 N.J.L. 148 (Sup. Ct. 1947). 13 Appleman, Insurance Law and Practice (1943), § 7401, p. 50; 1 Couch, Cyclopedia of Insurance Law (1929), § 188, p. 392."
This strict rule of construction against the insurer is applicable to "other insurance" clauses. See 5 Couch, Cyclopedia of Insurance Law (1929), sec. 1042, p. 3643; Roman Catholic Church v. Royal Ins. Co., 158 La. 601, 104 So. 383 (Sup. Ct. 1925). In Automobile Ins. Co. v. *256 Springfield Dyeing Co., 109 F.2d 533, 536 (3 Cir. 1940), the court used this language:
"Certainly, the words of the clause upon which appellant relies do not expressly refer to insurance taken out by others than appellant's insured; and the insurer's present contention rests on no more than its own construction of the clause based on a self-serving inference. It is no less reasonable, however, to infer that the clause was intended to embrace only other insurance taken out by Spring-field. In that situation, any doubt or ambiguity is to be resolved in favor of the insured and against the insurer."
citing, among other authorities, American Alliance Ins. Co. v. Brady Transfer & S. Co., 101 F.2d 144 (8 Cir. 1939); Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928). Note also Lucas v. Garrett, 209 S.C. 512, 41 S.E.2d 212, 169 A.L.R. 660 (Sup. Ct. 1947); and 2 Richards on Insurance (5th ed. 1952) sec. 362, p. 1192. The burden of proving defense of "other insurance" is on the insurer urging it. Kansas City Fire & Marine Ins. Co. v. Baker, 229 Ark. 130, 313 S.W.2d 846 (Sup. Ct. 1958). In treating a controversial endorsement of an insurance policy, the wording of a Federal case was paraphrased in United Deliveries, Inc., v. Norwich, etc., Ltd., 133 N.J.L. 393, 398 (E. & A. 1945):
"We must struggle as we can to impose coherence upon language put together at random, but we may and should insist upon the most unsparing use of the canon contra proferentem; that is, upon the underwriter disclosing a plain path out of the jungle he has created."
Whether or not the Emmco policy contained an "other insurance" clause, or any other type of special co-insurance was not alleged in the third-party complaint or developed by pretrial discovery. The Emmco policy was not admitted into evidence. It is not a matter of record in any of the proceedings, and no testimony was adduced with respect to its terms and conditions.
*257 Motors, on appeal, for the first time, contends that Rothenberg is insured under the Emmco policy and, consequently, he had "other insurance" against loss. It maintains that this question is, in a material sense, cognate and germane to the controversy, and that the appellate court, in the exercise of its original jurisdiction under N.J. Constitution, Art. VI, Sec. V, par. 3, should require the production of the Emmco policy for inspection in order to resolve the issue.
A new defense is injected into the case. Since it was not asserted in the trial court proceedings, and does not concern jurisdiction or public policy, it should not, for the first time, be considered on appeal. Reynolds Offset Co., Inc., v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959); Varriano v. Miller, 58 N.J. Super. 511, 520 (App. Div. 1959); Colegrove v. Behrle, 63 N.J. Super. 356, 368 (App. Div. 1960). Cf. Foster v. New Albany Machine & Tool Co., 63 N.J. Super. 262, 268 (App. Div. 1960). Our Appellate Courts are not even bound to consider constitutional questions that have not been raised below. Roberts Electric, Inc. v. Foundations & Excavations, Inc., 5 N.J. 426, 429 (1950); Evtush v. Hudson Bus Transportation Co., 7 N.J. 167, 173 (1951). This court observed in Ex-Cell-O Corp. v. Farmers Coop-Dairies Ass'n., 28 N.J. Super. 159, 161 (App. Div. 1953):
"There is a public concern in preventing an appeal, a not inexpensive matter, from becoming a vehicle, not for a review of action taken below, but in reality for the continuance of the trial function. Justice is concerned with the merits of a cause, but only for a certain time. Ordinarily, within some period of time, an action must come to an end, and subject to an appeal, the judgment must become final and beyond the reach of afterthoughts. Quite appropriately, in the ordinary situation, an appeal should not be made use of to provide an extension of that period."
It is urged that the practice of insurance companies to include in their automobile insurance policies an "omnibus clause" insuring (in addition to the named insured) those *258 who operate the insured vehicle, with the named insured's permission, is so common and widespread that this court may take judicial notice thereof. Insurance policies, and special clauses therein, are matters of contractual relationship between the parties, and their rights thereunder are ordinarily settled by the specific terms and conditions of their agreement. Judge (now Justice) Francis, in the case of Mau v. Union Labor Life Ins. Co., 31 N.J. Super. 362 (App. Div. 1954), refused to notice judicially that an inscription "WT-18 Ctf. No. 57," inserted under the designation "Number" on a policy of life insurance, indicated the existence of an employer's group insurance contract. A fortiori, this court should not take judicial notice of the existence of an "omnibus clause," or the terms and conditions of such a clause, or any part of an insurance contract which is not in evidence. Judicial notice is generally limited to facts of record and facts of general knowledge. "It is said that the term `judicial notice' means no more than that the court will bring to its aid and consider, without proof of the facts, its knowledge of those matters of public concern which are known by all well-informed persons." 31 C.J.S. Evidence § 6 p. 509. See, also, IX Wigmore on Evidence (3d ed.), sec. 2568, p. 536; Grand View Gardens, Inc., v. Hasbrouck Heights, 14 N.J. Super. 167 (App. Div. 1951); James Mitchell, Inc., v. Kreuger, 10 N.J. Misc. 1176, 1179 (Cir. Ct. 1932). The Emmco policy is not a matter of record or within common knowledge.
Motors advanced defenses at the trial level; interrogatories were propounded; and the Emmco policy was within reach of Motors by subpoena duces tecum. A review of the entire record does not reveal elements of surprise or injustice that would impel the exercise of our original jurisdiction under R.R. 1:5-4(a) and 2:5, as urged by Motors, or to invoke R.R. 1:27A and relax the rules that limit judicial review to matters presented to the trial court.
Judgment affirmed.