75 N.J. Super. 350 (1962)
183 A.2d 154
THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, A CORPORATION OF THE STATE OF PENNSYLVANIA, PLAINTIFF,
v.
PASQUALE V. PALMIERI, ET AL., DEFENDANTS.
ZURICH INSURANCE COMPANY, AN INSURANCE CORPORATION, PLAINTIFF,
v.
PASQUALE V. PALMIERI, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 25, 1962.
*352 Mr. Michael Patrick King for plaintiff Insurance Company of the State of Pennsylvania (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Mr. H. Hurlburt Tomlin for defendants North River Insurance Co. and R. Louis Ruberton, individually and t/a Parkview Distributors.
Mr. Robert W. Page for plaintiff Zurich Insurance Company (Messrs. Taylor, Bischoff, Neutze & Williams, attorneys).
WICK, J.S.C.
These are consolidated actions for declaratory judgment instituted by plaintiff, The Insurance Company of the State of Pennsylvania, hereinafter referred to as Pennsylvania, and plaintiff, Zurich Insurance Company, hereinafter referred to as Zurich, for this court's determination of their duty, as well as that of a party defendant, North River Insurance Company, hereinafter referred to as North River, to defend and indemnify certain alleged insureds in an action now pending before the United States District Court for the District of New Jersey.
There is no dispute as to the essential facts, which disclose that on the date in question, Sunday, April 3, 1960, *353 defendant Pasquale V. Palmieri was sole proprietor of a gasoline service station in the Township of Waterford. During the course of operating said service station, Palmieri found himself in need of additional gasoline and, as was his practice and business custom, sought to obtain same from defendant R. Louis Ruberton, a marketer for defendant Sinclair Refining Company. Upon contacting Ruberton, Palmieri was informed that Ruberton could not make the requested delivery due to personal commitments. Ruberton told Palmieri that he could use Ruberton's tank truck, obtain the gasoline and make the delivery himself. Ruberton allowed Palmieri to deliver his own gas, apparently because Palmieri had previously worked for him, but Palmieri was not paid for these personal deliveries. Pursuant to Ruberton's suggestion Palmieri delivered his own gasoline and while in the process of returning the truck to Ruberton was involved in an accident with Roseann and Alfred Tagliaferri, party plaintiffs in the Federal District Court suit.
The crucial issue before the court is, which insurer or insurers afford coverage to Palmieri? This requires interpretation of the omnibus and garage keeper's exclusion clauses within the affected policies, as well as the "Other Insurance" clauses contained therein. To alleviate possible confusion in the relationship of the several parties it should be noted that Palmieri is insured by Pennsylvania, Ruberton by North River and Sinclair Refining Company, hereinafter referred to as Sinclair, by Zurich. Palmieri, Ruberton and Sinclair are all named insureds under policies of liability insurance with their respective carriers.
Pennsylvania asserts that the garage keeper's exclusion in the North River policy does not exclude coverage for the permissive user Palmieri. The exclusion upon which this contention is based is found in the omnibus clause of the North River policy which provides,
"III. DEFINITION OF INSURED. (a) With respect to the insurance for bodily injury liability and for property damage liability *354 the unqualified word `insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply: (1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof, * * *" (Emphasis added)
North River, on the other hand, asks for a determination that Pennsylvania is primarily responsible for coverage by reason of its issuance of a policy of insurance to Palmieri and acceptance of premiums paid by him. Should this court be inclined to agree, responsibility would be predicated on the following provision of the Pennsylvania policy permitting coverage.
"Division 2  Premises  Operations  Automobiles Not Owned or Hired: The ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the named insured, a partner therein or a member of the household of any such person." (Emphasis added)
It is apparent that the responsibilities and duties of the insurers hinge on the interpretation placed on the garage keeper's exclusion as it applies to the facts and circumstances before this court. If the exclusion is held to operate, Pennsylvania must bear primary responsibility, but if it does not operate, a different duty arises.
Ownership of the tank truck in Ruberton is not denied, nor is the fact of permissive use granted by Ruberton to Palmieri. Applying these facts to the omnibus clause of the North River policy leaves no doubt that Palmieri qualified as an additional insured thereunder. The determination does not halt here, however, since application *355 of the exclusion will control as to whether Palmieri remains as an "insured" or is excluded from coverage under the North River policy.
In order to analyze the applicability of the exclusion it is necessary to consider, not only that Ruberton owned the truck, but if he had not been busy he would, no doubt, have made the delivery himself. By his own admission Ruberton said he attempted to avoid week-end deliveries if possible, but would make them if he happened to be available. Ruberton was not available on this date, so Palmieri made the delivery to his own station. It is not contended that Palmieri was to perform any repair or other service upon the truck while in his possession. He was interested solely in the cargo borne by the truck, i.e., gasoline. The pivotal question is whether the delivery can be considered a use arising out of the operation of the service station. In Allen v. Travelers Indemnity Co., 108 Vt. 317, 187 A. 512, 514 (Sup. Ct. 1936), the court stated:
"No precise definition of the phrase `arising out of the operation' of a public garage or automobile repair shop can be attempted. It all depends upon the circumstances of the particular case, the nature of the transaction, its connection with the business, and whether it can be said to be a natural and necessary incident or consequence of the operation, though not foreseen or expected. See Brown v. Bristol Last Block Co., 94 Vt. 123, 125, 108 A. 922."
There is no reason to omit service stations from inclusion with public garages and repair shops since they are all in the same category and found within the standard garage keeper's exclusion clause.
If this were a situation where Palmieri was delivering the truck to his station for repair or returning after performance of repair there would be little doubt, the exclusion would apply. Berry v. Travelers Insurance Co., 118 N.J.L. 571 (E. & A. 1937). Such is not the case. Ruberton was a marketer for Sinclair and Palmieri was a customer of Ruberton. Courts can take judicial notice of the fact that *356 service stations pump and sell gasoline on Sunday. Such being the case, there are those that will exhaust their supply. The desire for increased income as well as the wish to promote good will dictates that the station operator will attempt to refill his depleted gasoline reservoir. It then rests with his dealer or marketer to determine whether he will accommodate. Again, income and promotion of good will may be substantial factors in persuading him to comply.
It becomes, therefore, the act of the marketer in refueling his customers. Someone must convey the fuel. Whether it be the marketer or someone in his stead, the act of supply or resupply remains that of the marketer. Ruberton consented to accommodate Palmieri and comply with his request for gasoline. In driving the truck Palmieri was merely carrying out Ruberton's design to accommodate him. Palmieri carried the status of a bailee. He intended to exercise control over the vehicle, and by driving he did, in fact, exert the physical control necessary to obtain the possession over the truck required of a bailee. J.L. Querner Truck Lines, Inc. v. Safeway Truck Lines, Inc., 65 N.J. Super. 554 (App. Div. 1961), affirmed 35 N.J. 564 (1961). But a bailment relation is essentially one of contract, Silvestri v. South Orange Storage Corp., 14 N.J. Super. 205 (App. Div. 1951), and Sunday contracts will not be given effect, R.S. 2:207-1 (replaced N.J.S. 2A:171-1), Greene v. Birkmeyer, 8 N.J. Super. 217 (App. Div. 1950). See also N.J.S. 2A:171-1. This places the court in a quandary since Palmieri's status as operator of the truck is certainly vital toward determination of the matter. The facts disclose that Palmieri was the only service station operator Ruberton permitted to make his own deliveries, that he had previously worked for Ruberton at an hourly rate delivering Sinclair products to other service stations, and that he was not paid for deliveries to his own station although he did pay for the products he received.
The policy issued by North River was intended to cover Ruberton in the discharge of his business, exclusions excepted. *357 The policy would unquestionably have covered Ruberton had he undertaken the requested delivery on the day in question. Despite the fact that the wholesale distribution and sale of gasoline on Sunday would no doubt come within the purview of N.J.S. 2A:171-1, prohibiting business other than works of necessity and charity on Sunday, there is nothing contained within the policy of North River limiting liability for operation of the tank truck on such a day of the week. If Ruberton could operate the truck as aforesaid and be within the policy coverage, it follows that one acting for or on behalf of Ruberton would properly qualify as an additional insured within the North River policy.
Palmieri should not be regarded differently than any other person or employee to whom Ruberton may have permitted use of the truck. It is the opinion of this court that Palmieri was no more than a mere substitute for Ruberton. The fact that he was delivering to his own station is inconsequential. Palmieri's use of the truck may well have been sufficiently incidental to the conduct of his service station to be within the provisions of his policy covering non-owned vehicles. I do not believe, however, that such use was so closely connected to the service station business as to be considered an act arising out of the operation thereof, and thus within the garage keeper's exclusion clause of the North River policy. A fine line exists, but it is a line nevertheless. Since Palmieri was an operator of Ruberton's vehicle by consent of the latter, he became an additional insured of North River within the omnibus clause of that insurer's policy. Further, on applying the garage keeper's exclusion of that policy to the arrangement in issue such exclusion does not operate to remove Palmieri as an "insured." Since the delivery by Palmieri is determined to be the act of Ruberton, Ruberton's insurer should not be permitted to dodge the consequences ensuing therefrom. If North River were discharged from responsibility here, it would have the effect of releasing it from an obligation for which it has contracted.
*358 One of the defenses raised by North River is that the arrangement between Palmieri and Ruberton was a Sunday bailment thereby making Palmieri's possession of the vehicle illegal. The court cannot agree with this contention. That the bailment per se might be unenforceable and of no effect is not disputed; our laws are quite clear in this area.
There is no attempt, however, to enforce or avoid the bailment as it stood. The Federal District Court suit out of which this matter arises is based on alleged negligence arising from operation of the bailed vehicle. It is the use of the vehicle which is alleged to be the proximate cause of the injuries sustained by the Tagliaferrises. To hold that the possession was illegal is to say the use was obtained without permission. That permission was granted by Ruberton to Palmieri for use of the vehicle is too well established by the circumstances and facts to warrant further comment. Even the insurance companies having limited coverage within the omnibus clauses of their policies do not exonerate themselves from liability or coverage for damages arising from operation of an insured's vehicle by one in permissive use when such permission is granted on Sunday.
Should this court sustain North River's position it would discourage one beyond reason from loaning his or borrowing another's vehicle on Sunday. The effect would reach beyond the bounds of this particular case, and equity, in good conscience, should not and will not so restrict the discretionary use one may choose to exercise in his chattel. If insurers are so inclined, let them so contract.
To declare such possession illegal in this matter would not only serve to exonerate North River from further responsibility, but would, no doubt, similarly discharge Pennsylvania since it would not only be burdensome to hold an insurer liable for damages emanating from an illegal possession, but also against public policy. Consequently Mr. Palmieri would be left without the defense of either insurer in the District Court action.
*359 The court's attention has been called to the 1961 Appellate Division decision of Mancuso v. Rothenberg, 67 N.J. Super. 248. It has been relied on by defendant North River as authority for the "Other Insurance" provisions contained in the policies of the affected insurers. The provision, as stated in the policy of North River, reads:
"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *." (Emphasis added)
The corresponding provision of the Pennsylvania policy is identical to that quoted above.
In the Mancuso case defendant Rothenberg was engaged in permissive use of plaintiffs' Fiat on a mission for his own benefit. A collision ensued and plaintiffs' insurer compensated plaintiffs for damage to their automobile, less $50 deductible. Plaintiffs then sued defendant for the full amount of loss for the benefit of their carrier, Emmco Insurance Company (Emmco), as subrogee, and for themselves as to the $50 deducted. Defendant thereupon impleaded his carrier, Motors Insurance Corporation (Motors), as third-party defendant. Motors denied liability, claiming that collision insurance covering the auto was issued, and was thereunder paid by Emmco (less $50), and that under the circumstances, its coverage was excess insurance according to the "Other Insurance" clause of its policy. The court found that the sole negligence and proximate cause of the accident rested with Rothenberg. The Appellate Division ruled that the Motors policy provided Rothenberg with coverage for collision losses to non-owned automobiles. While the Mancuso decision provides a good interpretation of the "Collision" and "Other Insurance" clauses of defendant's policy, the case is distinguishable from the matter in issue.
*360 It does not appear that the court considered Rothenberg as an additional insured within the omnibus clause of the Emmco policy, or whether it was even faced with such an issue. More than likely it was not. The court states that the Emmco policy was not admitted into evidence or asserted in the trial court proceedings. It was not a matter of record and could not, therefore, be injected as a defense on the appellate level. Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959). Neither would the court take judicial notice of the omnibus clause contained therein. Since the Motors policy in Mancuso v. Rothenberg, supra, was the only policy of record, the court applied the rules of strict construction thereto, holding Motors bound by its contract of insurance. By analogy, this court would be faced with the same situation had Ruberton sued Palmieri, the latter impleaded Pennsylvania with the North River policy being neither asserted nor made a matter of record. I am confronted with no such situation. All policies are presently in evidence and under the scrutiny of this court.
In the present matter this court has concluded that Palmieri is an additional insured within the North River policy. As such he falls directly within the provisions of the "Other Insurance" clause in the North River policy. Palmieri does in fact have other insurance by reason of his policy with Pennsylvania providing coverage for non-owned vehicles. Pennsylvania and North River are consequently bound by the "Other Insurance" provision of the North River policy and both shall share the burden of defense of defendants in the United States District Court action.
In the preceding discussion the responsibility of Zurich, insurer of Sinclair Refining Company, has been intentionally omitted. Zurich is asking this court to determine that under the policy issued it will be bound for excess coverage only, payment under which will not become due until the policy limits of North River and Pennsylvania *361 have been exhausted. Zurich bases its contention on the "Other Insurance" clause of its policy providing:
"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." (Emphasis added)
The Zurich policy is the only policy in this case containing the excess coverage clause. The view of our courts in interpreting clauses similar to the one above was well established in the case of American Surety Company of New York v. American Indemnity Company, 8 N.J. Super. 343 (Ch. Div. 1950), wherein the court states (at page 349):
"I shall hold that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such a situation, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It follows that the so-called other insurance clause in the primary policy excluding or modifying liability if the additional insured has other valid and collectible insurance is inapplicable because the insurance under the excess coverage policy is not to be regarded as other collectible insurance available to the insured until the primary policy has been exhausted.
"Expressed more explicitly, I resolve that a non-ownership clause with an excess coverage provision as embodied in the plaintiff's policy does not constitute other valid and collectible insurance within the import and meaning of a primary policy with an omnibus clause."
The American Surety Company case has been cited with approval in Cosmopolitan Mutual Insurance Company v. Continental Casualty Company, 28 N.J. 554 (1959); Indemnity, etc., of N.A. v. Metropolitan, etc. of New York, 53 N.J. Super. 90 (Ch. Div. 1958), (reversed 59 N.J. *362 Super. 547 (App. Div. 1960), 33 N.J. 507 (1960)), reversing judgment of Appellate Division and affirming judgment of Chancery Division; Matits v. Nationwide Mutual Insurance Company, 59 N.J. Super. 373 (App. Div. 1960), affirmed 33 N.J. 488. Sinclair is an additional insured within the definition of the North River policy since it falls within the language of that policy providing coverage for
"* * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or the permision of either." (Emphasis added)
Cosmopolitan Mutual Insurance Company v. Continental Casualty Company, supra, in discussing American Surety Co. v. American Indemnity Co., supra, stated (at page 561):
"* * * The case merely follows the general rule that where an excess clause and pro-rata clause appear in concurrently effective automobile liability policies, the pro-rata clause is disregarded and full effect is given to the excess clause, making the pro-rata policy the primary insurance."
The matter is well settled and does not warrant further discussion. This court is in full accord with the authorities cited.
In accordance with all of the foregoing determinations it is the conclusion of this court that Pennsylvania and North River shall bear co-responsibility for defense in the United States District Court action. It is further determined that if a judgment is obtained against defendants in that suit, they shall be liable for satisfaction thereof to the extent provided in the "Other Insurance" provisions of the North River policy. Should any part of said judgment remain unsatisfied after exhaustion of the applicable limits of liability of the aforesaid policies, then Zurich shall have a duty of contribution in the amount of any such excess to the extent of the applicable limits of liability of its policy and in the manner provided by the "Other Insurance" clause of the policy issued by it.