Kane, J.
Underlying this appeal is an action to recover benefits under a life insurance policy issued by the Union Warren Savings Bank.[1] The principal question raised by this appeal is whether the insured’s failure to pay premiums was excused by the *96 Bank’s failure to provide notice of the premium’s due date. Resolution of this question begins with our examination of the underlying facts.
This $10,000 life insurance policy was negotiated by Irving Cohen (plaintiffs husband) aresidentand businessman of Norwood and by Edward Hackett, the Bank’s Insurance Officer. Mr. Cohen and his Norwood business were by no means strangers to the Bank which had transacted loans for Cohen’s Norwood business, financed Mr. Cohen’s Norwood condominium and maintained at its Norwood branch two savings accounts for Freda and Irving Cohen. At least once a week the Cohens transacted business at the Bank’s Norwood branch and regularly exchanged correspondence with the Bank on their savings accounts and the mortgage on their Norwood condominium.
To assure payment of the Bank’s $12,000 mortgage on the Norwood condominium located at 52 Queensboro Court, Norwood, Mr. Cohen in October of 1978 applied through Mr. Hackett for a $10,000 life insurance policy. Mr. Hackett through asking questions listed on the Bank’s insurance form learned from Ms. Cohen and noted on the application that the Cohens’ 52 Queensboro Court address would serve as the location where “premium notices (would) be sent to”; that policy dividends would be subtracted from premiums and that premiums would be paid “annually.” Acceptance .of the application by the Bank was conditioned on Mr. Cohen passing a physical examination. Arrangements for the physical were handled by the Bank’s managing agent of its life insurance policies, the Savings Bank Life Insurance Council[2] which sent notice of the exam to Mr. Cohen’s 52 Queensboro Court address.
In May of 1979, the Council used the phone to notify Mr. Cohen that the policy had been approved and could be executed at the Bank's Norwood office. Irving Cohen proceeded to the Bank’s Norwood office where he executed the policy and handed over the annual premium of $204.48 to Mr. Hackett who advised the insured that annual premium notices would be sent to Mr. Cohen.
This policy contains a payment of premiums section declaring that the policy will not remain in force beyond 12:01 A.M. on the date when the next premium or installment is payable. This sharp edged default provision is softened by a grace period provision allowing for payment of the premium and continuation of the policy for a “period of thirty-one days including the due date.” The due date triggering the default and defining the grace period is not specified in either the policy application or the policy provisions.[3]
Notice of this due date and the amount due was sent by the Council to the insured at a nonexistent 52 Greensboro Court, Norwood. This negligently addressed notice was returned by the Post Office to the Council which forwarded the rejected mail to the Bank. Despite this return of the mail by the Post Office, the Council mechanically waited for the grace period to run and then followed up with a letter bearing a dividend check of $13.10 and notifying the Cohens of the cancellation. This misaddressed letter was of course returned to the council. Despite being repeatedly notified that the notices were not reaching the insured the Council undertook no further measures to cure its error. Likewise the Bank despite its knowledge of the returned mail and despite its constant contact with the insured failed to communicate the default to the insured who had sufficient funds in the Bank’s custody to pay the premiums. Furthermore, there was uncontradicted evidence that neither of the Cohens “were consciously aware that they had failed to make annual premiums due.”
After the death of Mr. Cohen in 1984, Ms. Cohen attempted to collect the life insurance proceeds but was advised that the policy had been cancelled for nonpayment. This action claiming breach of contract and negligence then ensued.
The Trial Judge in ruling for the Bank strongly anchored his decision upon afinding that the contract imposed no duty upon the Bank to notify the insured of the annual *97 premium. Specifically, the Court found that “there is no provision in the contract that provides for the insurer to give notice of premiums due dates to the insured.” Since there was no duty to notify, the Court found that the insured’s failure to pay the premiums was unexcused and caused the policy to lapse. The Trial Judge furthermore found that despite Mr. Hackett’s gratuitous promise of notice and the Bank’s negligence in handling notice that estoppel would not bar cancellation because the insured had slept on his rights.
Appellee in its brief to this Court reasserts the Trial Judge’s reliance upon the contract as generally defining the rights and duties of the parties and as specifically not imposing a duty upon the Bank to notify the insured of the due date. Appellee proceeds to reason that since the contract imposed no duty on the Bank to notify and the contract imposed on the insured adufy to pay, the insured’s failure to pay cancelled the policy. This exposition of contractual obligations seems unassailable provided that the contract imposed no duty to notify the insured of the premium’s due date. If on the other hand there was a duty to notify then the Bank’s Mure to honor this obligation would offer an excuse for the insured’s failure to pay. Accordingly, we must determine if this contract imposed a notification duty on the Bank.
“Insurance policies are generally interpreted in the same way as other contracts. In construing [such] policies [the] dominant purpose is to give effect to the intentions of the parties. Where the relevant language is unambiguous and the application of the policy to the relevant facts is clear, that intent must be ascertained by the plain and ordinary meaning of the contract language. Where, however, the policy terms are ambiguous and the coverage issue is reasonably disputed, a court may consider extrinsic evidence of the surrounding circumstances and of the parties’ intent. For example, evidence of the construction given to the language by the parties and of the customary usage of persons in the same commercial setting is normally admissible. If the meaning of the policy terms remains unclear, the policy is generally construed in favor of the insured in order to promote the policy's objective of providing coverage.” Eagle-Picher Industries Inc. v. Liberty Mutual Ins., 682 F.2d 12 (1st Cir. 1980); See Pinheiro v. Medical Malpractice Joint Underwriting Association of Massachusetts, 406 Mass. 288 (1989); Sherman v. Employers Liability Assurance Corp. Ltd., 343 Mass. 354 (1961); Also see Cardin v. Royal Ins. Co. of America, 394 Mass. 450, 453 (1985); Murphy v. Noonan, 30 Mass. App. Ct. 950 (1991).
Here we find a policy that uses the phrase “due date” to critically define the date this policy would lapse and a policy that offers no date or formula for identifying the due date. This omission in identifying the date this premium payment is due (payable) and the grace period begins could not have been the Bank’s intent. Without a due date the policy is without a termination date and such avoid allowing for an interminable policy could nothave been the intentof the Bank which would then be lefthelpless to address the insured’s deficiency. As such an irrational result is grossly inconsistent with the Bank’s expressed intent to cancel in case of a payment default it is logical to construe the contract as allowing for identification of the due date through notice. Under such a construction the Bank is held responsible for providing the insured with notice of the due date which in turn provides the Bank with a date for cancellation in case the insured defaults.
Even if such a construction of the contract is not clear but ambiguous there exist several external sources forresolving any ambiguity. Rizzo v. Cunningham, 303 Mass. 16 (1939); Martino v. First National Bank of Boston, 361 Mass. 325 (1972). The insurance application authored by the Bank communicated to the insured the Bank’s intentto provide premium notices. Such an intentwas furthermore expressed by the Bank’s insurance officer when the policy was executed. Expression of an intent to notify was followed in 1980 by the Bank’s attempt to notify the insured of the due date. These expressions of an intent to notify certainly resolve any ambiguity in favor of the conclusion that the contract called for notice.
Such an interpretation in favor of notice may in any event rest upon the independent *98 ground that the Bank was required to notify the insured of the amount due, a sum not fixed in the contract but a variable amount involving calculation by the Bank of any dividend due the insured. See Phoenix Ins. Co. v. Dooster, 106 U.S. 30 (1882); Minnick v. State Farm Mutual Automobile Ins. Co., 174 A.2d 706 (Del. 1961); Mau v. Union Labor Life Ins. Co., 106 A.2d 748 (N.J. Super. Ct. App. Div. 1954). As the insured “could not read the bank’s corporate mind”[4] to know what dividend was due the Bank “under any fair interpretation of (the) contract... was under a duty... to give seasonable notice of the amount of dividends and thereby inform him as to the cash to be paid in order to keep alive the policy.” Phoenix v. Dooster, supra at 38.
As the Bank without excuse failed to notify the insured of either the date due or the amount due the Bank breached the contract. Because of this breach by the Bank there was no default by the insured who had never been called upon to pay. See Minnick v. State, supra at 710. Accordingly this policy never lapsed.
Based on the foregoing, judgment for defendant on Count I is vacated. Judgment for plaintiff is to enter in the amount of $10,000 plus interest and costs.

 The Union Warren Savings Bank is hereinafter referred to as the Bank.

 The Savings Bank Life Insurance Council is hereinafter referred to as the Council.

 No policy language presented to this Court identifies the due date.

 Mechanics National Bank of Worcester v. Killeen, 377 Mass. 100, 107 (1979).